Louis R. Strubeck, Jr. (SBT 19425600)
Elizabeth N. Boydston (SBT 24053684)
Timothy S. Springer (SBT 24088460)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone:   (214) 855-8000
Facsimile:   (214) 855-8200
louis.strubeck@nortonrosefulbright.com
liz.boydston@nortonrosefulbright.com
tim.springer@nortonrosefulbright.com

COUNSEL FOR THE REORGANIZED DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **El Paso Children's Hospital Corporation,** | ) | |
| | ) | **Case No. 15-30784** |
| Debtor. | ) | |

## REORGANIZED DEBTOR'S OBJECTION TO THE
## AMENDED PROOF OF CLAIM NO. 76-2 FILED BY HAE KIM

El Paso Children's Hospital Corporation (the "Reorganized Debtor," and, prior to the

Effective Date, the "Debtor") files this *Objection to the Amended Proof of Claim No. 76-2 Filed*

*by Hae Kim* (the "Objection").[1] In support of the Objection, the Reorganized Debtor respectfully

states as follows:

### I.      SUMMARY OF OBJECTION

1.      The Reorganized Debtor hereby objects to proof of claim no. 76–2 filed by Hae

Kim ("Kim").  The Claim (defined below) does not set forth sufficient factual allegations to

establish the validity of the Claim or even to merit the basic presumption of prima facie validity.

As a result, the Claim does not meet the minimum standards required by the Bankruptcy Code

---

[1]   Capitalized terms not otherwise defined in the Objection shall have the same meaning ascribed in the
Confirmed Plan or the Confirmation Order (defined below).

and the Federal Rules of Bankruptcy Procedure[2] and should be disallowed and expunged from the claims register in the above-referenced bankruptcy case (the "Case").

2.      Kim holds an unliquidated and contingent claim for which no formal litigation has been commenced.  However, from the minimal information provided on the face of the Claim, this matter likely involves (1) liquidation or estimation of a contingent or unliquidated claim (2) related to an alleged personal injury tort (3) for the purposes of distribution under the Confirmed Plan.  Therefore, withdrawal of the reference is required under subsections-(b)(2)(B), (b)(5), and (d) of § 157 to title 28 of the U.S. Code so that the District Court may determine the Claim.  Accordingly, pursuant to prior discussions with Kim's counsel, the Reorganized Debtor will be filing an agreed motion to withdraw the reference of this Contested Matter contemporaneously with the Objection that will also request a status conference to address a scheduling order concerning the Objection.

3.      Upon withdrawal of the reference, liquidation of the Claim should occur in federal court pursuant to the District Court's proper bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(5).  Kim submitted herself to the bankruptcy jurisdiction of courts in this District, and the Confirmed Plan and Confirmation Order (defined below) ensure that the Claim and the Objection should be determined in federal court.  Moreover, the factor test used to guide the discretionary abstention analysis under § 1334(c)(2) overwhelmingly supports adjudication in federal court.  Therefore, the Reorganized Debtor respectfully requests entry of an order substantially in the same form as "Exhibit A," denying and expunging Claim No. 76-2 from the claims register.

---

[2]    Hereinafter, "Bankruptcy Rule" or "Bankruptcy Rules," as appropriate.

---

REORGANIZED DEBTOR'S OBJECTION TO
AMENDED PROOF OF CLAIM NO. 76-2 FILED BY HAE KIM                                    **Page 2 of 23**
27408987.4

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157(d) and 1334(a)–(b).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicate for the relief requested in the Objection is 11 U.S.C. § 502; 28 U.S.C. §§ 1334(b)–(c) and 157(b)(5); and Bankruptcy Rules 3007 and 9014.

## III.     RELEVANT BACKGROUND

### A.     The Bankruptcy.

5.     On May 19, 2015 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code (the "Code").  Dkt. No.[3] 1.

6.     Pursuant to the *Order Combined with Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Dkt. No. 25, the "Bar Date Notice"), the deadline for all non-governmental entities to file proofs of claim was September 22, 2015 (the "Bar Date").

7.     On October 28, 2015, the Debtor and one of its creditors, El Paso County Hospital District d/b/a University Medical Center of El Paso ("UMC"), filed the *Second Amended Joint Chapter 11 Plan of Reorganization* (Dkt. No. 453, the "Joint Plan").

8.     On December 8, 2015, the Bankruptcy Court held a confirmation hearing at which certain modifications were made to the Joint Plan.  At the Bankruptcy Court's direction, the plan proponents filed *Second Amended Joint Chapter 11 Plan of Reorganization, as Modified* (Dkt. No. 510, the "Confirmed Plan") on December 10, 2015.  Among other things, the Confirmed Plan provides that on or after the Effective Date, the Reorganized Debtor shall have the right to

---

[3]     Unless noted otherwise, "Dkt. No." or "Dkt. Nos." will refer to the respective entry or entries, as appropriate, on the Bankruptcy Court's docket in the Case.

file objections to Claims, which includes the Claim (defined below), and shall have the authority to compromise, settle, or otherwise resolve or withdraw objections to Claims.

9.      On December 11, 2015, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Reorganization, as Modified* (Dkt. No. 515, the "Confirmation Order").

10.     The Confirmed Plan became effective on January 8, 2016 (the "Effective Date").

11.     The Bankruptcy Court has extended the Claims Objection Deadline multiple times since the Effective Date, making September 15, 2016 the new deadline under the Confirmed Plan (the "Extended Claims Objection Deadline").  Dkt. No. 666; *see also* Dkt. Nos. 590, 607, 677.

**B.      The Claim.**

12.     On September 17, 2015, Hae Kim filed proof of claim no. 76-1 (the "Original Claim").[4]  On the face of the Original Claim, Kim asserted damages of $300,000 against the Debtor as of the Petition Date based on alleged "discrimination and retaliation."

13.     Although not set forth in the documents filed, the Original Claim was based upon charge number 453-2015-00408 (the "Charge") that Kim filed with the Equal Opportunity Employment Commission ("EEOC") prior to the Petition Date, on February 12, 2015.  The Charge alleged discrimination and retaliation in employment.  The Debtor answered the Charge on January 5, 2016, denying all liability.  No further action was taken until after the Effective Date, on May 10, 2016, when the EEOC issued a Right to Sue Letter at Kim's request.[5]

---

[4]    A true and correct copy of the Original Claim is attached to the Objection as "Exhibit B."

[5]    A true and correct copy of the Right to Sue Letter is attached to the Objection as "Exhibit C."

14.     On May 31, 2016, the Reorganized Debtor filed its *Objection to Proof of Claim Number 76 Filed by Hae Kim* (Dkt. No. 618, the "<u>Objection to Original Claim</u>"). On June 22, 2016, Hae Kim filed her *Response to Reorganized Debtor's Objection to Claim* (Dkt. No. 630).

15.     On July 6, 2016, Kim amended the Original Claim by filing proof of claim no. 76–2 (the "<u>Amended Claim</u>," together with the Original Claim, the "<u>Claim</u>").[6] By the Amended Claim, Kim alleges her damages inflated from $300,000 to $1.5 million without asserting any changed circumstances. Moreover, the Amended Claim includes as an exhibit a proposed original petition Kim intends to file in "a court of competent jurisdiction," presumably upon obtaining leave from the discharge injunction. The proposed original petition is styled as a petition to be filed in a Texas state district court.

16.     On July 8, 2016, the Reorganized Debtor filed its *(I) Reply to Hae Kim's Response [Dkt. No. 630] to Claim Objection [Dkt. No. 618] and (II) Objection to Amended Proof of Claim No. 76-2 Filed by Hae Kim* (Dkt. No. 648), in which the Post-Effective Date Committee of Unsecured Creditors (the "<u>Committee</u>") joined (Dkt. No. 651).

17.     On July 12, 2016, the Bankruptcy Court conducted a status conference on the Reorganized Debtor's Objection to Original Claim. Following a discussion on the record regarding potential withdrawal of the reference, the Bankruptcy Court continued the hearing on the Objection to Original Claim until September 13, 2016.

18.     Two days later, the Reorganized Debtor filed its *Objection to Amended Proof of Claim Number 76-2 filed by Hae Kim* (Dkt. No. 658, the "<u>First Objection to Amended Claim</u>"), and the Bankruptcy Court granted an expedited hearing and briefing schedule. Dkt. No. 660. By the First Objection to Amended Claim, the Reorganized Debtor requested that the Bankruptcy

---

[6]     A true and correct copy of the Amended Claim is attached to the Objection as "<u>Exhibit D</u>."

Court disallow the Amended Claim based solely on two bankruptcy-related procedural grounds: (a) that the Amended Claim was untimely filed; and (b) bankruptcy equitable grounds. The Committee joined the First Objection to Amended Claim. Dkt. No. 670. On July 25, 2016, Hae Kim filed her *Response to Reorganized Debtor's Objection to Amended Proof of Claim Number 76-2 filed by Hae Kim*. Dkt. No. 669.

19.     On July 29, 2016, the Bankruptcy Court held a hearing on the First Objection to Amended Claim. For the reasons stated on the record during its oral ruling, the Bankruptcy Court denied the First Objection to Amended Claim on the procedural grounds raised and further ruled that nothing in the *Order Denying Objection to Amended Proof of Claim Number 76-2 of Hae Kim* (Dkt. No. 671) constitutes a determination by the Bankruptcy Court as to the substantive merits of the Amended Claim. Specifically, the order denying the First Objection to Amended Claim makes clear that the order does not determine the validity or liquidate the amount of the Amended Claim; does not determine the Reorganized Debtor's liability, if any, for the Amended Claim; and does not determine the substantive defenses of the Reorganized Debtor to the Amended Claim. Dkt. No. 671 at 2.

20.     Following disposition before the Bankruptcy Court of the bankruptcy-related procedural issues involving the Amended Claim, the Reorganized Debtor now files this Objection on the merits of the Claim. The Reorganized Debtor files this Objection as a separate, stand-alone objection so as to clarify the issues in anticipation of the reference to this contested matter being withdrawn.[7]

---

[7]     For clarity, the Reorganized Debtor will refer to this objection as the "Objection," although it is technically the Reorganized Debtor's second objection to the Amended Claim. Moreover, this Objection encompasses the scope of the issues raised in previous pleadings before, but not already ruled upon by, the Bankruptcy Court. Therefore, this Objection will moot any other pending pleadings concerning the Claim.

## IV.    OBJECTION

21.    The Reorganized Debtor hereby objects to the Claim and seeks disallowance and expungement of the Claim from the claims register.  A claim objection commences a contested matter.  Fed. R. Bankr. P. 9014.  For the reasons discussed in more detail herein, the parties agree the reference regarding the contested matter commenced by this Objection (the "Contested Matter") should be withdrawn.  Accordingly, pursuant to prior discussions with Kim's counsel, the Reorganized Debtor will be filing an agreed motion to withdraw the reference of this Contested Matter contemporaneously with the Objection that will also request a status conference to address a scheduling order concerning the Objection.

22.    Although adjudication of the Claim is required in the District Court, rather than the Bankruptcy Court, the adjudication of the Objection is properly commenced, and should remain, in *federal* court.  Kim's prior statements and pleadings before the Bankruptcy Court indicate that Kim desires to commence a suit in Texas state court.  Such an action is inconsistent with the provisions of the Confirmed Plan and cannot be countenanced under the guise of discretionary abstention.  Therefore, in addition to objecting to the merits of the Claim, the Reorganized Debtor will also address the jurisdictional issues posed by the Claim.

**A.    The Claim Is Not Properly Asserted Against the Estate and Should be Disallowed.**

*1.    Applicable Law.*

23.    Section 502(a) of title 11 of the U.S. Code (the "Bankruptcy Code") governs objections to claims and provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  If an objection to the claim is made, "the court, after notice and a hearing, shall determine the

amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." *Id.* § 502(b).

24. To receive the prima facie validity afforded under the Bankruptcy Code and the Bankruptcy Rules a proof of claim *must* "set forth the facts necessary to support the claim." *In re Chain*, 255 B.R. 278, 280 (Bankr. D. Conn. 2000) (citations omitted); *see also Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996) (noting failure to attach supporting information deprives claim of prima facie validity); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (noting that failure to allege sufficient facts to support liability will not shift burden of proof to objector). The requirement that a claim provide sufficient information to ascertain its validity flows directly from the Code's prohibition on claims to the extent a "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *See* 11 U.S.C. § 502(b)(1).

### 2. *The Claim Should Be Disallowed.*

25. Here, Kim has not fulfilled the basic requirements of presenting a claim against the bankruptcy estate so as to warrant prima facie validity. Even after amendment, the Claim fails to set forth sufficient and necessary supporting facts. Therefore, prima facie validity does not arise as to the Claim, and Kim bears the burden of proving her claim under the Bankruptcy Code and Bankruptcy Rules. *See In re Allegheny Int'l*, 954 F.2d at 173–74.

26. The Reorganized Debtor denies that Kim suffered any discrimination, whether based upon gender, national original, or otherwise. Moreover, the Reorganized Debtor strenuously objects to Kim's blatant attempt to manufacture an increase in alleged damages without reason and without leave of the Bankruptcy Court or notice to the Reorganized Debtor.

More than ten (10) months after the Claims Bar Date, Kim filed the Amended Claim, which—just like the Original Claim—is still based on an alleged employment discrimination and retaliation claim that the Kim seeks to bring under the Texas Labor Code. Yet, without explanation, the Amended Claim includes a five-fold increase in alleged damages from $300,000 to a whopping $1.5 million.[8]

27. Such an increase is particularly staggering considering that the statute under which the Kim bases her claim explicitly limits the "amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and the amount of punitive damages awarded under this section may not exceed, for each complainant . . . $300,000 in the case of a respondent that has more than 500 employees." Tex. Lab. Code Ann. § 21.2585(d)(4) (West 2015). Upon information and belief, Kim has been employed, at least at times, since leaving the Debtor's employment, which would further limit her alleged damages. Therefore, Kim's alleged damages far exceed the realm of possibility—even assuming she could succeed on the merits of the Claim without any mitigation of damages.

28. Kim has not commenced a suit based on her Claim, but rather, has only provided a proposed original petition as an exhibit to her Amended Claim. As a result, the bankruptcy claims process has cast the Reorganized Debtor as the party initiating determination of the Claim. Yet, without the commencement of a prior suit, the Reorganized Debtor can only deny the merits of the Claim at this stage.

---

[8]   To be clear, Kim has never justified the basis for the $300,000 amount of her Original Claim, so the magnification of that alleged damages in the Amended Claim is completely inexplicable.

---

29.     Nonetheless, the peculiar procedural posture of this Contested Matter does not prevent disposition of the Claim in federal court. Upon withdrawal of the reference to the District Court, which both parties support, the first order of business would be entering a scheduling order to allow for determination. Should the District Court determine adjudication should occur in federal court—and it should—the Bankruptcy Rules provide a mechanism to normalize the trial process. Specifically, Bankruptcy Rule 9014(c) would authorize the District Court to deem this Contested Matter to be an adversary proceeding by making applicable Part VII of the Bankruptcy Rules. By doing so, the District Court may apply the pleading standards for an adversary proceeding found in Bankruptcy Rules 7003–7005 and 7008–7016, which would allow Kim to plead her claim through a complaint and the Reorganized Debtor to answer and present objections, as necessary. Such a process would afford Kim full due process, including her right to a jury trial, while reorganizing the need for expediency to liquidate and determine the Claim as part of the claims allowance process. As a result, no need exists to send this Contested Matter anywhere other than the District Courts in this District.

**B.      Adjudication of this Contested Matter Should Be in Federal Court.**

30.     Determination and disallowance of the Claim should occur in federal court pursuant the District Court's bankruptcy jurisdiction under 28 U.S.C. § 1334(b). Kim submitted herself to the jurisdiction of this federal courts by filing her proof of claim. *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)); *Katchen v. Landy*, 382 U.S. 323, 322 n.9 (1966) ("[She] who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure."). Accordingly, determination of the Claim is proper in federal, not state, court.

### *1.*  *The Applicable Statues Support Adjudication in Federal Court.*

31.    A "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. § 101(5).  As no formal litigation has been commenced or liability found, Kim holds a contingent and unliquidated claim.

32.    The liquidation of the Claim at this stage in the Case requires involvement of the District Court.  Section 157(b)(2)(B) states that the "liquidation or estimation of personal injury tort claims "for purposes of distribution" is not a core proceeding that a bankruptcy court may determine.  28 U.S.C. § 157(b)(2)(B); *see also In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 (Bankr. S.D. Tex. 1994).  Additionally, § 157(b)(5) states that:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

*Id.* § 157(b)(5).  A claim for a gender and national original discrimination charge likely implicates this exception.  *See In re Autoseis, Inc.*, No. 14-20130, 2015 LEXIS 2243, *5–6 (Bankr. S.D. Tex. June 1, 2015) (recommending that the District Court withdraw the reference of a contested matter involving a claim for gender and national origin discrimination).

33.    Both parties agree with this conclusion because of the nature of the Claim and because liquidation of the Claim is required for plan distribution.  The dispute lies with what happens next.  The Reorganized Debtor submits that this Contested Matter should remain in the federal District Court, the court of competent jurisdiction.

34.    Although estimation or liquidation of a personal injury tort claim for plan distribution purposes is not a core proceeding, the distinction between core and non-core proceedings affects only a *bankruptcy court's* jurisdiction and constitutional authority.  A *district*

*court* unquestionably has jurisdiction over such a claim. *See id.* § 1334(b) (granting the District Court bankruptcy jurisdiction over proceedings arising under title 11 or related to a case under title 11). Indeed, the statute specifically dictates that "personal injury tort and wrongful death claims shall be tried" in a federal district court. *Id.* § 157(b)(5).

35.  The only question created in § 157(b)(5) is whether venue will be in the federal district courts in the district where the bankruptcy case is pending or where the claim arose. *Id.* In either venue, the statute further provides that mandatory abstention shall not apply to a personal injury tort claim. *Id.* § 157(b)(4). These provisions work together to serve the overarching policy goal of providing a centralized forum for all of a debtor's disputes. *See A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 998, 1014 (4th Cir.) (holding that § 157(b)(5) is a mandatory provision that favors centralization of related bankruptcy litigation), *cert. denied*, 479 U.S. 876 (1986).

36.  Here, venue is proper in the federal district court for the Western District of Texas, the district in which both the bankruptcy case is pending and the events allegedly giving rise to the Claim occurred. Accordingly, any intimation that the District Court is not "a Court of competent jurisdiction" is a red herring.

### 2.  *The Confirmed Plan Requires Adjudication in Federal Court.*

37.  The Confirmed Plan and the Confirmation Order further ensure that Kim's only recourse to recover on her alleged claims is through the claims process. Section 12.1 of the Confirmed Plan discharges and releases "all Claims of any nature whatsoever against the Debtor and any of its property . . . upon the Effective Date . . . whether or not [] a Proof of Claim based upon such debt is filed . . . ." Dkt. No. 510 at 36, § 12.1. The Confirmation Order approving the Confirmed Plan provides an injunction that "permanently bar[s] and enjoin[s] all Holders of

Liens and Claims arising prior to the Effective Date from asserting or continuing to assert against the Debtor, its Estate, or its Assets, any and all Claims or Liens, whether liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, . . . or other activity of any kind or nature than occurred prior to the Effective Date." Dkt. No. 515 ¶ 31. That prohibition expressly includes "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor . . . ." *Id.* ¶ 32. These provisions of the Confirmed Plan and Confirmation Order, taken together, discharge and enjoin any action by Kim upon her allegations outside of the claims process, including filing a lawsuit in state court.

38.     Fifth Circuit law dictates that the prohibitions in the Confirmed Plan and Confirmation Order apply to Kim. By filing her proof of claim as an unsecured creditor and, later, an amendment, Kim "participated" in the bankruptcy case. *See United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, No. 15–11056, slip op. at 10 (5th Cir. Aug. 5, 2016) (per curiam) (holding that filing a proof of claim and an amendment constituted "participation" for res judicata purposes),[9] *aff'g In re Vitro Asset Corp.*, 539 B.R. 108, 119–20 (N.D. Tex. 2015); *Elixir Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.)*, 507 F.3d 817, 823 (5th Cir. 2007) (holding that filing a single proof of claim as an unsecured priority creditor constitutes "participation"). And a chapter 11 plan binds a claimant that participates in the bankruptcy case when the plan is confirmed without objection and is not appealed. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir. 1987). By filing her Claim, Kim was put on notice of the proceedings, including the confirmation process. *See id.* (citing *Chicot Cnty.*

---

[9]     A courtesy copy of the slip opinion in *In re Vitro Asset Corp.* is attached a "Exhibit E."

*Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 373–75 (1939)). But Kim neither objected to the Confirmed Plan nor appealed the Confirmation Order.

39. Accordingly, Kim is bound by the discharge in the Confirmed Plan and the injunction in the Confirmation Order, which together prohibit Kim from commencing an action apart from her Claim. Therefore, her only means of recovery, if any, are through this Contested Matter, the venue of which is proper in the federal courts of this District.

**C.     The Court Should Not Abstain from Determining the Contested Matter.**

40. Section 1334(c) allows a court exercising bankruptcy jurisdiction to abstain from hearing certain proceedings. 28 U.S.C. § 1334(c)(1)–(2). As the Claim likely implicates the personal injury tort claim exception in § 157(b)(2)(B), the mandatory abstention provisions in § 1334(c)(2) expressly do not apply. *Id.* § 157(b)(4). And the factor test used to analyze permissive or discretionary abstention under § 1334(c)(1) does not favor abstention. *See id.* § 1334(c)(1). Accordingly, the Reorganized Debtor requests that the District Court not abstain from exercising its proper bankruptcy jurisdiction over liquidation of the Claim.

41. The discretionary abstention provision in § 1334(c)(1) states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

*Id.* § 1334(c)(1). The starting point for analyzing whether discretionary abstention under § 1334(c)(1) is appropriate "is whether abstention will impede or disrupt the bankruptcy court's exclusive and nondelegable control over the administration of the estate within its possession." *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004) (quoting *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940)) (internal punctuation omitted). To guide this analysis, courts have fashioned a twelve-factor test

to determine whether discretionary abstention is appropriate under § 1334(c)(1). *Callan v. Black Strata, LLC (In re Montcrest Energy, Inc.)*, Adv. No. 14–04039, 2014 WL 6982643, at \*7–8 (Bankr. N.D. Tex. 2014). The factors include:

> (1) the effect, or lack thereof, on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*Id.* The Reorganized Debtor will address each factor in turn.

### 1. Abstention Will Negatively Affect Efficient Administration of the Estate.

42. Abstention from determining this Contested Matter will negatively affect efficient administration of the bankruptcy estate. Kim's Claim is but one of a many claims to which the Reorganized Debtor has objected, or will object, before the Extended Claims Objection Deadline. Objections to other claims will, as with Kim's Claim, commence individual contested matters that require notice and a hearing and that may also require individual scheduling orders for determination. *See* Fed. R. Bankr. P. 9014(a). So long as that process continues, the Reorganized Debtor must continue to pay fees to the U.S. Trustee based on ongoing operations and distributions.

43. Kim's proposed original petition attached to the Amended Claim requests Level 3 discovery in state court—the most cumbersome and time consuming discovery level. So the timetable Kim proposes already indicates delay in liquidating a claim that can be more

expeditiously handled under federal bankruptcy jurisdiction. Expedited schedules and deadlines, even in adversary proceedings, are common with bankruptcy jurisdiction for the purpose of efficient administration. For support of this proposition, the District Court need look no further than adversary proceedings in connection with this very Case. On the Petition Date, the Debtor initiated adversary proceeding no. 15-03005 against UMC, and the scheduling order in that proceeding set a four-day trial on the merits after full discovery only *156 days* after the Petition Date and a mere *100 days* after entry of the scheduling order. *El Paso Children's Hosp. Corp. v. El Paso Cnty. Hosp. Dist. d/b/a Univ. Med. Cntr. of El Paso (In re El Paso Children's Hosp. Corp.)*, Adv. No. 15-03005 (Bankr. W.D. Tex. July 14, 2015), ECF No. 22.

44.     Dragging out liquidation of the Claim in a forum where such practices are not common will result in this Case lingering longer than necessary and the Reorganized Debtor incurring substantial additional fees every quarter—in this specific case, at least $20,000 per month. *See* Dkt. Nos. 604, 668. Accordingly, the first factor weighs against abstention.

### 2. *The State Law Issues Presented in the Claim Do Not Sufficiently Predominate the Bankruptcy Issues in this Contested Matter to Warrant Abstention.*

45.     The Contested Matter includes jurisdictional issues predominated by federal bankruptcy law. The jurisdictional questions concern interpreting and implementing the discharge in the Confirmed Plan and enforcing the injunction in the Confirmation Order. Additionally, the District Court must consider Fifth Circuit precedent regarding "participation" in the bankruptcy case as to why Kim is bound by the Confirmed Plan and Confirmation Order. The substance of the legal issues underlying the merits of the Claim are not yet determined, but the allegations in the Claim indicate that Kim would pursue her Claim under the Texas Labor Code instead of federal law. Accordingly, the Reorganized Debtor submits that issues in this

Contested Matter, when considered together, are either neutral or weigh only slightly in favor of abstention.

### 3. *The Claim Does Not Involve Difficult or Unsettled State Law Issues.*

46.     The third factor considers whether the claim involves difficult or unsettle issues of state law.  Again relying on the allegations in the Amended Claim, it appears Kim intends to proceed with a claim under the Texas Labor Code.  Nothing about such a claim would be difficult or unsettled.  Federal courts, including those in this District, regularly adjudicate and liquidate claims on the basis of the very same statutes raised in the Amended Claim.  *E.g.*, *Delavel v. PTech Drilling Tubulars, L.L.C.*, No. 15-20471, 2016 WL 3031069 (5th Cir. 2016); *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646 (W.D. Tex. 2013); *Leyva v. United Parcel Svc. Inc.*, No. EP-11-CV-409-PRM, 2011 WL 11751025 (W.D. Tex. 2011); *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-299-KC, 2011 WL 3862256 (W.D. Tex. 2011); *Parga v. Kuehne + Nagel Inc.*, No. EP-08-CA-144-FM, 2009 WL 2956825 (W.D. Tex. 2009). Accordingly, the third factor weighs heavily against abstention.

### 4. *No Parallel Proceeding Has Been Commenced in State Court.*

47.     It is undisputed that no proceeding has been commenced in state court, or any other court, concerning the allegations in the Claim.  Accordingly, the fourth factor weighs against abstention.

### 5. *The Existence of a Jurisdictional Basis Other than 28 U.S.C. § 1334.*

48.     The fifth factor considers the existence of a jurisdictional basis over the proceeding other than 28 U.S.C. § 1334.  This factor is similar to Factor 4 because no proceeding has been commenced *other than* this Contested Matter.  Accordingly, the only jurisdictional basis currently is § 1334.  More importantly, because of the Confirmed Plan and Confirmation

Order, the *only* jurisdictional basis necessary *is* § 1334. As a result, the fifth factor weighs against abstention.

### 6. *The Claim Is Directly Related to the Main Bankruptcy Case.*

49. The sixth factor considers the degree of relatedness or remoteness of the proceeding to the main bankruptcy case and weighs against abstention. This proceeding is directly related to the main bankruptcy case—it is a claim objection. Claims administration is at the core of bankruptcy jurisdiction, and the administration of claims other than personal injury tort claims is a core power of bankruptcy courts. 28 U.S.C. § 157(b)(2)(B). Even if liquidated in the District Court, the outcome of this contested matter determines whether the Claim becomes an "Allowed" Claim for purposes of distribution under the Confirmed Plan. And Kim's Amended Claim ballooned her alleged damages from $300,000 to $1.5 million without explanation. Such a dramatic increase in damages directly affects other creditors and parties in interest, meaning liquidation of the Claim, now more than ever, affects the main bankruptcy case. Indeed, the Post-Effective Date Committee joined the Reorganized Debtor's prior objections to the Claim. Dkt. No. 651, 670. Accordingly, the sixth factor weighs against abstention.

### 7. *The Substance Rather than Form of the Proceeding.*

50. The seventh factor considers the substance rather than form of the proceeding. The substance of the Claim is an allegation of retaliation and discrimination in employment. That Kim appears to be asserting state, rather than federal, law in her Claim, does not itself favor abstention. As addressed with Factor 3, Kim's state law claims can be heard in federal court as effectively as in state court, and federal district courts routinely hear such claims. Accordingly, the seventh factor is, at worst, neutral in the analysis.

### 8. *Severing the State Law Issues from the Claim Is Not Feasible.*

51.     The eighth factor considers the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state courts. While theoretically possible, severing the state law claims from this proceeding is not feasible. As addressed with the first factor, further delay of liquidating this Claim cuts against efficient administration of the bankruptcy estate. The procedural posture of this contested matter is that no separate proceeding concerning the Claim is pending. To sever the state law claims—again, assuming Kim will assert state law claims—will require abating this proceeding so that Kim can file a lawsuit in state court. As discussed with Factor 1, the Kim's proposal to request Level 3 discovery in state court would further slow the liquidation of this Claim. Expedited disposition through this contested proceeding serves the interests of efficient administration while still ensuring Kim is afforded due process and has her day in court to resolve her Claim. Thus, the eighth factor is, at a minimum, neutral in the abstention analysis.

### 9. *The Burden on the District Court's Docket.*

52.     The Reorganized Debtor submits that this proceeding and the Claim are ripe for disposition without the need for a trial. As discussed above in paragraph 29, the Reorganized Debtor submits that, upon withdrawal of the reference, the District Court could enter a scheduling order that would allow for Kim to file a complaint under Bankruptcy Rule 7003 and provide time for a response and objection under Bankruptcy Rule 7012. Based on the bare-bones allegations proposed by Kim in her Amended Claim, the Reorganized Debtor anticipates summary disposition of the Claim is likely. In any event, liquidation of the Claim in federal court will occur more expeditiously that in state court even if proceeding past a summary disposition. The criminal dockets of *both* the federal District Courts in this District *and* the

Texas state courts in El Paso are heavy. That the contested matter would proceed under bankruptcy jurisdiction in federal District Court would mean more expedited disposition than in state court, regardless of the criminal docket. Accordingly, the Reorganized Debtor submits that the ninth factor disfavors abstention or, at worst, is neutral in the analysis.

### 10. The Reorganized Debtor is Not Forum Shopping.

53. The tenth factor considers the likelihood that the commencement of the proceedings in bankruptcy court involved forum shopping by one of the parties. As extensively briefed and argued in the Bankruptcy Court before the Effective Date, the Debtor did not commence its bankruptcy case as a result of this Claim. Moreover, the commencement of this proceeding—that is, the Contested Matter by virtue of a claim objection—is not the result of forum shopping. As described above, the Reorganized Debtor is working diligently to revolve the all claims prior to deadlines set by the Confirmed Plan and extended by the Bankruptcy Court's orders. Kim had not commenced a proceeding in state or federal court to liquidate her Claim and otherwise provided no supporting documentation to her proof of claim to substantiate her allegations. Instead, Kim has made only naked allegations of discrimination and retaliation on the face of her Claim. As a result, the Reorganized Debtor *had* to file the Objection to resolve and liquidate the Claim as part of the greater claims allowance and disallowance process.

54. If anything, Kim is the party engaging in forum shopping by intimating before the Bankruptcy Court that the District Court is not "a Court of competent jurisdiction," Dkt. No. 630 ¶ 4, despite admitting venue and jurisdiction are proper in this District, *id.* ¶ 4. In any event, the Reorganized Debtor has not engaged in forum shopping, so the tenth factor weighs against abstention.

### 11. *The Existence of Jury Trial Right Does Not Affect the Analysis.*

55. The existence of a right to a jury trial in connection with the Claim is a neutral factor. Filing a proof of claim typically waives the right to a jury trial. *See Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)). But filing a proof of claim for a personal injury or wrongful death tort claim does not affect a jury trial right that would otherwise exist under non-bankruptcy law. 28 U.S.C. § 1411. The existence of a jury trial right in connection with abstention at the bankruptcy court level would often favor abstention because bankruptcy courts have a limited ability to conduct a jury trial. *Id.* § 157(e). Nonetheless, this factor is neutral to the analysis because withdrawal of the reference is also required for a trial to liquidate a personal injury tort claim for plan distribution purposes. *See id.* § 157(b)(5). And a federal District Court is well-equipped to, and indeed often does, conduct a jury trial on such claims. *See supra* ¶ 46 (collecting cases). A trial could also be conducted before a magistrate judge upon the parties' consent. 28 U.S.C. § 636(c)(1). Accordingly, the eleventh factor is neutral in the abstention analysis.

### 12. *No Non-Debtor Third Parties Other than Kim Are Involved.*

56. The twelfth and final factor considers the involvement, and therefore the rights and interests, of any non-debtor party other than the claimant. Here, no non-debtor parties are involved in the Contested Matter. In fact, the only two parties to this dispute are Kim and the Reorganized Debtor by virtue of the Claim against the Debtor's estate. The outcome of this contested proceeding would potentially affect other creditors, as evidence by the Post-Effective Date Committee's joinders to the Reorganized Debtor's prior objection to the Amended Claim. Dkt. Nos. 651, 670. Otherwise, concern for the involvement of non-debtor or non-claimant

parties' rights is irrelevant to the analysis. Accordingly, the twelfth factor weighs against abstention.

57.     The vast majority of the factors for analyzing discretionary abstention under § 1334(c)(1) weigh against abstention from determining the Contested Matter, and the remaining factors are neutral or only slightly favor abstention. Accordingly, the Reorganized Debtor respectfully requests that the District Court exercise its proper bankruptcy jurisdiction to hear and determine the Contested Matter and liquidate the Claim.

## V.    **CONCLUSION**

WHEREFORE, the Reorganized Debtor respectfully requests entry of an order in substantially the same form as the proposed order attached as Exhibit A (a) sustaining the Reorganized Debtor's objection to the Claim; (b) disallowing the Claim; (c) expunging the Claim from the claims register maintained in the Case; (d) deeming the claims register modified to reflect the Court's order; and (d) granting such other and further relief at law or in equity to which the Reorganized Debtor may be entitled.

Dated: August 8, 2016
Dallas, Texas

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By:   _/s/ Timothy S. Springer_
    Louis R. Strubeck, Jr. (SBT 19425600)
    Elizabeth N. Boydston (SBT 24053684)
    Timothy S. Springer (SBT 24088460)
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

**COUNSEL FOR THE
REORGANIZED DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Objection was served upon the counsel and parties of record, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service on the 8th day of August, 2016 and upon the following recipients by first-class U.S. mail, postage prepaid, mail and electronic mail:

**Via First Class Mail and Email**
**(Kevin.M.Epstein@usdoj.gov)**

UNITED STATES TRUSTEE
Kevin Epstein, Trial Attorney
615 E Houston Street, Room 533
San Antonio, Texas 78205

**Via First Class Mail and Email**
**(chaugland@jghpc.com)**

Corey W. Haugland
James & Haugland, P.C.
609 Montana Avenue
El Paso, Texas 79902

**Via First Class Mail and Email**
**(Gerry.Howard@kempsmith.com)**

Gerald G. Howard
221 N. Kansas, Suite 1700
El Paso, Texas 79901

**Via First Class Mail and Email**
**(db@brinkmanlaw.com)**

Daren R. Brinkman
Brinkman Portillo Ronk, APC
4333 Park Terrace Drive, Suite 205
Westlake Village, CA 91361

**Via First Class Mail and Email**
**(BrettDuke@BrettDuke.com)**

Hae Kim
C/O Brett Duke
Brett Duke P.C.
4157 Rio Bravo
El Paso, TX 79902

_/s/ Timothy S. Springer_

# EXHIBIT A

Proposed Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **El Paso Children's Hospital Corporation,** | ) | |
| | ) | **Case No. 15-30784** |
| Debtor. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING REORGANIZED DEBTOR'S OBJECTION
TO AMENDED PROOF OF CLAIM NO. 76-2 FILED BY HAE KIM**

Before this Court is the *Objection to Amended Proof of Claim No. 76-2 Filed by Hae Kim*

(the "Objection") filed by El Paso Children's Hospital Corporation (the "Reorganized Debtor").

By the Objection, the Reorganized Debtor seeks disallowance and expungement of Claim No.

76-2 on the grounds that the Claim[1] is not properly asserted against the Estate.   Having

---

[1]     Capitalized terms not otherwise defined in this Order shall have the same meaning ascribed in the Objection.

27408987.4

considered the Objection, and having determined sufficient notice was provided, the Court finds

that it has jurisdiction over the Objection and constitutional authority to enter a final order, that

the Objection is well-taken, and that good cause exists to grant the relief requested.  Accordingly,

it is therefore:

     **ORDERED** that the Objection is **SUSTAINED**;

     **ORDERED** that the Amended Claim No. 76-2 is hereby **DISALLOWED** and

**EXPUNGED** from the claims register in this Case;

     **ORDERED** that the claims registry in this Case is hereby deemed amended to reflect the

relief granted herein;

     **ORDERED** that this Order shall be effective immediately upon entry; and

     **ORDERED** that this Court will retain jurisdiction to implement, interpret, and enforce

this Order.

     **IT IS SO ORDERED.**

###

Order uploaded by:

Timothy S. Springer (SBT 24088460)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
tim.springer@nortonrosefulbright.com

COUNSEL FOR REORGANIZED DEBTOR

# EXHIBIT B

Original Claim No. 76-1

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Western District of Texas | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>El Paso Children's Hospital Corporation | Case Number:<br>15-30784 |
|---|---|

**FILED**

U.S. Bankruptcy Court
Western District of Texas

9/17/2015

Yvette M. Taylor, Clerk
COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**HAE KIM**

Name and address where notices should be sent:
HAE KIM
P.O. BOX 71402
EL PASO, TX 79907

Brett Duke
4157 Rio Bravo
El Paso, TX 79902

Telephone number: 915-875-0003     email: brettduke@brettduke.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)
Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

Telephone number:     email:

**1. Amount of Claim as of Date Case Filed:** $_____300000.00_____
If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Discrimination and Retaliation__ (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _5429_

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
**Value of Property:** $_____
**Annual Interest Rate (when case was filed)** __% ☐ Fixed or ☐ Variable

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ _____
**Basis for perfection:** _____
**Amount of Secured Claim:** $_____
**Amount Unsecured:**     $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a)(_).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are **not** available, please explain: <u>Creditor initiating claim with EEOC at time of bankruptcy</u>

**8. Signature:** (See instruction #8) Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: <u>Brett Duke</u>

Title: <u>Attorney</u>

Company: <u>Brett Duke, P.C.</u>

Address and telephone number (if different from notice address above):

<u>4157 Rio Bravo</u>

<u>El Paso, TX 79902</u>

Telephone number: <u>915-875-0003</u>   email:

<u>brettduke@brettduke.com</u>

/s/  Brett Duke                    9/17/2015

(Signature)                        (Date)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 3:16-cv-00446-KCG   Document 1-5   Filed 08/15/16   Page 31 of 54
Case 3:16-mc-00574-DCG   Document 1-5   Filed 08/16/16   Page 31 of 54
15-30784-hcm   Doc#682-3   Filed 08/08/16   Entered 08/08/16 22:47:46   Exhibit C Pg 1 of 3

# EXHIBIT C

Right to Sue Letter

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Hue H. Kim<br>14069 Peter Noyes Dr<br>El Paso, TX 79928 | From: El Paso Area Office<br>300 E. Main Drive, Suite 500<br>El Paso, TX 79901 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 453-2015-00408 | **Yvette Rodriguez,**<br>**Investigator** | **(915) 534-4527** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*                                                        May 10, 2016

Lucy V. Orta,                                                    *(Date Mailed)*
Area Office Director

Enclosures(s)

cc:

| Ellas Armendariz<br>Vice President of Operations<br>EL PASO CHILDREN'S HOSPITAL<br>4845 Alameda Avenue<br>El Paso, TX 79905 | Brett Duke<br>BRETT DUKE P.C.<br>4157 RIO BRAVO<br>El Paso, TX 79902 |
|---|---|

Enclosure with EEOC
Form 161-B (11/09)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT D

Amended Claim No. 76-2

**Fill in this information to identify the case:**

Debtor 1    **EL PASO CHILDREN'S HOSPITAL CORPORATION**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: **WESTERN DISTRICT OF TEXAS**

Case number    **15-30784**

Official Form 410

## Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**Hae Kim**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

**c/o Corey W. Haugland**
Name
**James & Haugland, P.C.**
Number   Street
**609 Montana Avenue**

**El Paso**    **TX**    **79902**
City      State    ZIP Code

Contact phone   **915-532-3911**

Contact email   **chaugland@jghpc.com**

**Where should payments to the creditor be sent?** (if different)

**Brett Duke**
Name
**Attorney at Law**
Number   Street
**4157 Rio Bravo**

**El Paso**    **TX**    **79902**
City      State    ZIP Code

Contact phone   **915-383-0340**

Contact email   **brettduke@brettduke.com**

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) _____76_____    Filed on   **9/17/2015**
                                                        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☑ Yes. Who made the earlier filing? **Brett Duke**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** Do you have any number you use to identify the debtor?

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    5   4   2   9

**7.** How much is the claim?     $1,500,000.00     Does this amount include interest or other charges?

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Tex. Labor Code Section 21.254 Discrimi./Retaliati**

**9.** Is all or part of the claim secured?

☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: _____

Amount of the claim that is secured: _____

Amount of the claim that is unsecured: _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: _____

Annual Interest Rate (when case was filed) _____
☐ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition: _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

**12.** Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

☑ No

☐ Yes. *Check all that apply:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

**Amount entitled to priority**

_____

_____

_____

_____

_____

_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3** Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
                    MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

Name        Hae Kim

Title       _____

Company     _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     P.O. Box 71402
            Number      Street

            El Paso                          TX        79907
            City                             State     ZIP Code

Contact phone  915-875-0003          Email  yepuni7@gmail.com

---

HAE KIM,

     Plaintiff,

v.                                     Cause No. 2016-DCV-

EL PASO CHILDREN'S HOSPITAL CORPORATION,
individually and d/b/a EL PASO CHILDREN'S HOSPITAL,

     Defendant.

## PLAINTIFF'S ORIGINAL PETITION and
## REQUEST FOR DISCLOSURE TO DEFENDANT

### Discovery Level

1.    Plaintiff intends to conduct discovery under Level 3 Texas Rule of Civil Procedure 190.4.

### Parties

2.    Hae Kim, Plaintiff, is an individual and resident of El Paso County, Texas. Plaintiff is a Citizen of the State of Texas. Plaintiff is an employee as defined by section 21.002(7) of the Texas Labor Code.

3.    Defendant may be served with process by serving its Registered Agent Mary M. Bearden at 905 S. Filmore, Suite 400, Amarillo, Texas 79101 or wherever found. Defendant is a Citizen of the State of Texas. Defendant is an employer as defined by section 21.002(8) of the Texas Labor Code.

### Exhaustion of Administrative Procedures

4.    Plaintiff complied with all necessary administrative prerequisites. Plaintiff timely filed her Charge of Discrimination and received Notice of her Right to Sue and timely filed this original petition.

### Jurisdiction and Venue

5.    This suit is brought and jurisdiction lies pursuant to Section 21.254 of the Texas Labor

1



EXHIBIT

R-1

Code.   This action properly lies in El Paso County, Texas, where the unlawful employment practices occurred.

**Facts**

6.      Defendant hired Plaintiff on May 5, 2014.

7.      Plaintiff worked for defendant as an Accounting Manager.

8.      Defendant subjected Plaintiff to a hostile work environment because of her race/national origin, Korean, and sex, Female.   For instance, defendant would regularly make direct discriminatory and derogatory comments to and about Plaintiff, such as "women are not good what they do," "women should stay home," "why are you here working,", "women are not as smart as men,"and even "this is not a place for women."   Defendant would make fun of Plaintiff's accent, her pronunciations and humiliate her on an ongoing basis because of her race/national origin, Asian/Korean.   Because of Plaintiff's race/national origin and/or sex, defendant forced Plaintiff to work more than 87 hours per week, work every day, and sometimes until 2:00 a.m.  Plaintiff was left alone in defendant's building and required to work, even though the males were not.  Defendant subjected Plaintiff to a severe and/or pervasive hostile work environment, harassment, and discrimination because of her race/national origin and sex.

9.      Defendant discharged Plaintiff on February 11, 2015, because of her race/national origin, Korean, and sex, Female.

**Count I**
**Discrimination because of Race/National Origin**

10.     Plaintiff incorporates all allegations made elsewhere in this petition.

11.     Defendant violated section 21.051 of the Texas Labor Code.   As detailed above, defendant committed unlawful employment practices because defendant intentionally

2

discriminated against Plaintiff because of Plaintiff's Race/National Origin, Asian/Korean.

## Count II
## Discrimination because of Sex

12.    Plaintiff incorporates all allegations made elsewhere in this petition.

13.    Defendant violated section 21.051 of the Texas Labor Code.  As detailed above, defendant committed unlawful employment practices because defendant intentionally discriminated against Plaintiff because of Plaintiff's Sex, Female.

### Damages

14.    As a direct and proximate result of the defendant's discrimination Plaintiff has been damaged in the form of lost wages and benefits in the past and future and compensatory damages in the past and future, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

15.    Pursuant to Texas Rule of Civil Procedure 47(c)(1), Plaintiff has been damaged in an amount within the jurisdictional limits of this Court and she states that she seeks monetary relief over $1,000,000 for all the other relief to which the Plaintiff deems herself entitled.  This statement is made to comply with Texas Rule of Civil Procedure 47 and not for argument to the jury. The monetary relief actually awarded will ultimately be determined by the jury.

### Punitive Damages

19.    Pursuant to section 21.2585 of the Texas Labor Code,  Plaintiff is entitled to recover punitive damages from defendant for its actions as set forth above.  Defendant engaged in discriminatory practices with malice and reckless indifference to the state protected rights of Plaintiff.  Plaintiff seeks punitive damages in an amount to be determined by the jury.

### Attorneys Fees, Court Costs, and Expert Fees

20.     Pursuant to section 21.259 of the Texas Labor Code, Plaintiff is entitled to attorneys fees, costs of court, and expert fees.

### Conditions Precedent

21.     All conditions precedent have been performed or have occurred.

### Jury Demand

22.     Trial by jury is demanded and the applicable fee is paid.

### Prayer

23.     For these reasons, Plaintiff asks that defendant be cited to appear and answer, and, on final trial, that Plaintiff have judgment against defendant, for a sum withing the jurisdictional limits of this Court, for the following:

    a.      general damages;

    b.      special damages;

    c.      exemplary damages as determined by the jury;

    d.      prejudgment interest as provided by law;

    e.      postjudgment interest as provided by law;

    f.      attorneys fees, expert fees, court costs and all costs of suit; and

    g.      such other and further relief at law and equity to which Plaintiff may be justly entitled.

### Request for Disclosure to Defendant

24.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.

4

Respectfully submitted,

BRETT DUKE, P.C.
4157 Rio Bravo
El Paso, Texas 79902
(915) 875-0003
(915) 875-0004 (facsimile)
brettduke@brettduke.com

 /s/ Brett Duke
Brett Duke
Texas Bar No. 24012599
New Mexico Bar No. 14633

5

# EXHIBIT E

Opinion in *United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.),*
No. 15–11056 (5th Cir. Aug. 5, 2016) (per curiam)

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11056

In the Matter of:  VITRO ASSET CORPORATION,

        Debtor.

------------------------------

UNITED INDEPENDENT SCHOOL DISTRICT,

        Appellant,

v.

VITRO ASSET CORPORATION, And its Affiliated Debtors, Reorganized
Debtors and Appellees,

        Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-236

Before STEWART, Chief Judge, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

    Appellant United Independent School District ("UISD") failed to timely

object to, or appeal from, the bankruptcy court's order confirming Appellees

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-11056

Vitro Asset Corporation and its affiliated debtors' (collectively, "Reorganized Debtors") Chapter 11 reorganization plan. UISD then failed to file a claim for postpetition interest, penalties, and fees related to taxes on property owned by Reorganized Debtors within the period provided by the confirmed plan. UISD now argues that it should not be subject to the terms of the confirmed plan for various reasons. Because we agree with the district court that UISD's challenges to the plan are barred by res judicata, we affirm.

## I. BACKGROUND

In 2010, several creditors filed involuntary bankruptcy petitions under 11 U.S.C. § 303 against Reorganized Debtors. In 2012, the bankruptcy court granted these petitions and initiated bankruptcy proceedings.

UISD is an entity in Laredo, Texas, that has taxing authority. For the 2012 tax year, Vitro Packaging, L.L.C., an affiliated debtor of Vitro Asset Corporation, owned personal property within UISD's jurisdiction. In October 2012, UISD issued two tax bills to Vitro Packaging seeking a total of $464,709.97 (the "Base Taxes"). Pursuant to Texas law, UISD's claims were secured by a statutory lien on Vitro Packaging's property. *See* Tex. Tax Code Ann. § 32.01.

On April 4, 2013, Reorganized Debtors sought permission from the bankruptcy court to pay the taxes they owed, including those claimed by UISD. On April 5, UISD filed a proof of claim against Vitro Asset Corporation seeking a total of $598,360.56, which was comprised of $464,709.97 in Base Taxes, $51,118.10 in penalties and interest, and $82,532.49 in collection fees. This proof of claim, however, erred in several respects as it was directed to Vitro Asset Corporation when the property subject to the claimed taxes was actually owned by Vitro Packaging and improperly included amounts for postpetition interest, fees, and penalties. The bankruptcy court granted Reorganized Debtors' motion to pay taxes on April 23, and on April 24, Vitro Packaging paid

2

No. 15-11056

UISD $464,709.97—the amount claimed in the tax bills that had been issued by UISD. On June 19, 2013, UISD filed an amended proof of claim correcting the errors in its initial proof of claim. This amended proof of claim included Vitro Packaging as the debtor and no longer sought interest, penalties, or collection fees. As a result, the amended proof of claim sought only $464,709.97—the amount of the Base Taxes.

In November 2013, Reorganized Debtors filed their First Amended Joint Chapter 11 Plan of Reorganization. Several portions of this plan are relevant on appeal. Section 3.2 is titled "Unimpaired Classes of Claims and Interests" and provides in relevant part that "Class 2" claims "consist[] of all Allowed Secured Claims." It is undisputed that UISD's claims fall within this category.

Next, Section 3.5 provides deadlines for creditors possessing Class 2 claims such as UISD to seek "payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim." Pursuant to this section, these creditors "shall file with the Bankruptcy Court (and serve on the Debtors and the Office of the United States Trustee) a request seeking such relief within 30 days after the Effective Date."

The bankruptcy court confirmed this plan on November 14, 2013. Pursuant to Federal Rule of Bankruptcy Procedure 8002, any appeal from the bankruptcy court's order confirming the Chapter 11 plan must have been filed within 14 days after entry of the order. Fed. R. Bankr. P. 8002(a). UISD neither objected to the plan nor filed a notice of appeal.

The confirmed reorganization plan became effective on December 19, 2013 (the "Effective Date"). Accordingly, pursuant to Section 3.5 of the confirmed plan, any claim for "payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim" must have been made by January 18, 2014, which

3

Case: 15-50804 Document: 00513625435 Page: 47 Date Filed: 08/05/2016
15-30784-hcm Doc#682-5 Filed 08/08/16 Entered 08/08/16 22:47:46 Exhibit E Pg 5 of 12

was 30 days after the Effective Date. UISD did not file a claim with the bankruptcy court for postpetition interest, penalties, or collection fees during this period. On February 21, 2014, the bankruptcy court closed the proceedings. UISD received notice of each of these relevant documents.

In June 2014, UISD sent a letter to Vitro Packaging asserting that its earlier payment of the Base Taxes in April 2013 was insufficient due to the accrual of interest, penalties, and fees. In response, Reorganized Debtors stated that they had paid in full the amount sought in UISD's amended proof of claim and that any further collection efforts by UISD were improper. UISD's counsel responded that they would continue collection efforts, including by seizing inventory.

On October 9, 2014, Reorganized Debtors petitioned the bankruptcy court to reopen their bankruptcy cases and sought an order enforcing the confirmed plan. In response to Reorganized Debtors' motion, UISD presented the same argument to the bankruptcy court that it advances now on appeal: that application of Section 3.5 of the confirmed plan to its claims violates 11 U.S.C. §§ 502, 503, and 506, and this Court's decision in *Financial Security Assurance, Inc. v. T-H New Orleans Ltd. Partnership (In re T-H New Orleans Ltd. Partnership)*, 116 F.3d 790 (5th Cir. 1997), by improperly impairing UISD's claims. At the hearing on Reorganized Debtors' motion, however, UISD's counsel admitted that UISD had failed to raise this argument within the deadlines for objecting to, or appealing from, the plan. UISD's counsel further conceded that UISD had not filed a petition for interest or fees within the period provided by the plan.

The bankruptcy court granted Reorganized Debtors' request to reopen the bankruptcy cases and their petition to enforce the confirmation order. According to the bankruptcy court, UISD "failed to preserve any claim to the Disputed Fees on account of its Allowed Claim by [not] acting in accordance

4

No. 15-11056

with, and within the time frame required by, Section 3.5 of the Confirmed Plan." As a result, Reorganized Debtors' payment in April 2013 fully satisfied UISD's claim and UISD was not entitled to payment of any of the disputed fees. The bankruptcy court further held that any lien UISD may have held against Reorganized Debtors' property prior to the reorganization had been released and terminated upon the expiration of the 30-day claims period provided by Section 3.5 of the confirmed plan. Finally, the bankruptcy court issued an injunction prohibiting UISD from pursuing any further collection efforts related to the disputed fees. UISD sought reconsideration of this ruling, which the bankruptcy court denied.

On appeal from the bankruptcy court, the district court noted that while UISD asserted that the issue was whether the bankruptcy court improperly interpreted the plan such that it impaired UISD's claims, the actual issue was whether UISD's arguments were barred by res judicata. The district court held that each portion of UISD's claim—the taxes, interest, penalties, and collection fees—were covered by Section 3.5 of the confirmed plan and thus must have been sought within the 30-day period provided by the plan. Next, the district court held that the bankruptcy court had properly determined that UISD's lien had been discharged as part of the bankruptcy. Finally, the district court concluded that as a result of UISD's failure to timely object to, or appeal from, the bankruptcy court's order confirming the bankruptcy plan, UISD's arguments were precluded by res judicata. This appeal follows.

## II. STANDARD OF REVIEW

"When a court of appeals reviews the decision of a district court, sitting as an appellate court, it applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Sikes v. Crager (In re Crager)*, 691 F.3d 671, 675 (5th Cir. 2012) (quoting *Kennedy v. Mindprint (In re ProEducation Int'l, Inc.)*, 587 F.3d 296, 299 (5th

5

No. 15-11056

Cir. 2009)). That is, questions of law are reviewed de novo while factual findings are reviewed for clear error. *United States Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003).

## III. DISCUSSION

At the outset, it is necessary to clarify the issue on appeal. Like it did before the district court, UISD challenges the plan on the ground that the plan improperly impairs its claims to interest, penalties, and collection fees.[1] However, as the district court properly observed, the threshold issue is whether UISD's arguments are barred by res judicata. Notably, UISD does not seriously contend that the district court erred in finding that its arguments are barred by res judicata. In fact, UISD concedes that it has "never claimed that the Plan has no res judicata effect as to UISD" and that it "does not disagree with the district court that the Plan has res judicata effect." Instead, UISD appears to argue that the district court should not have addressed the issue of res judicata because UISD did not raise this question as an issue on appeal.

UISD is mistaken. It is well settled that a court sitting on appeal is not limited to considering only those issues raised by the appellant, but "may affirm a judgment upon any basis supported by the record." *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 153 (5th Cir. 2015) (quoting

---

[1] UISD also appears to contend that the confirmed plan terms should not apply to its claims because Reorganized Debtors did not object to UISD's original proof of claim that sought interest, penalties, and fees. In making this argument, however, UISD conspicuously ignores the fact that it filed an amended proof of claim that did not seek these amounts. As the district court correctly observed, this amended proof of claim is binding. As we explained in *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985), "filing of a proof of claim is tantamount to the filing of a complaint in a civil action." *Id.* at 552. As such, just like an amended pleading, an amended proof of claim supersedes the original filing and deprives the earlier filing of legal effect. *See Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985); *In re Enron Corp.*, No. 01 B 16034 (AJG), 2005 WL 3874285, at *1 (Bankr. S.D.N.Y. Oct. 5, 2005) ("The Amended Claim amended and superceded the Initial Claim."). Accordingly, the fact that Reorganized Debtors did not object to UISD's initial proof of claim is inconsequential.

6

No. 15-11056

*Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)). Moreover, UISD's failure to substantively contest the district court's ruling on res judicata waives this issue on appeal before this Court. *See Sanders v. Unum Life Ins. Co. of Am.,* 553 F.3d 922, 926 (5th Cir. 2008). Nevertheless, we address this issue below.

## A. Application of Section 3.5 to UISD's Claims

UISD asserts that its claims are not covered by Section 3.5 of the confirmed plan. As clearly explained by the district court, this argument lacks merit. Section 3.5 applies to claims seeking "payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim." Accordingly, by its unambiguous language, UISD's claim to postpetition interest is covered by this provision. The district court also correctly determined that this language, specifically "other costs associated with such claimant's Allowed Claim," includes UISD's claim to collection fees related to the Base Taxes owed by the Reorganized Debtors.

Next, UISD argues that its claim to penalties does not fall within this section because it is not seeking "reimbursement." However, as the district court observed, UISD itself considered these penalties to be a component of the interest owed as the tax bills it sent to Reorganized Debtors combined these amounts.

## B. Res Judicata

Because each aspect of UISD's claim is covered by Section 3.5 of the confirmed plan, UISD was required to file a petition for these amounts within 30 days from the plan's Effective Date. UISD failed to do so. In an attempt to overcome this lapse, UISD argues that it should not be bound by this requirement because impairing its claims in this way would be at odds with Section 4.2 of the confirmed plan, 11 U.S.C. §§ 502, 503, and 506, and this Court's decision in *In re T-H New Orleans Ltd.* As the district court correctly

7

No. 15-11056

held, however, UISD's arguments challenging the confirmed plan are barred by res judicata.

Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir. 1999). This principle is equally applicable to "bankruptcy plan confirmations." *Sun Fin. Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992). As we explained in *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), where a creditor fails to object to, or appeal from, the confirmation of a bankruptcy plan, "[r]egardless of whether [a] provision [of the plan] is inconsistent with the bankruptcy laws," a challenge to the "propriety or legality" of the plan is "foreclosed." *Id.* at 1050.

### 1. UISD's Lien

Generally, res judicata does not apply to secured creditors who possess a lien. *See id.* Res judicata may apply, however, where the lien has been discharged as part of the reorganization. *See In re Simmons*, 765 F.2d at 556–58. A lien may be discharged in bankruptcy under several circumstances, including invalidation of the lien by a provision of the bankruptcy code. *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494, 496 (5th Cir. 2013). As we have previously held, 11 U.S.C. § 1141(c), which provides that "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors," has the effect of invalidating a lien where four conditions are met. *Id.* (quoting 11 U.S.C. § 1141(c)); *see also Elixir Indus., Inc. v. City Bank & Tr. Co. (In re Ahern Enters., Inc.)*, 507 F.3d 817, 822 (5th Cir. 2007) ("[T]he confirmation of a Chapter 11 plan voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization."). These four conditions are as follows: "(1) the plan must be confirmed; (2) the

8

No. 15-11056

property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien." *In re S. White Transp., Inc.*, 725 F.3d at 496 (emphasis omitted) (quoting *In re Ahern Enters., Inc.*, 507 F.3d at 822).

Each factor is met here. The First Amended Joint Chapter 11 Plan of Reorganization was confirmed by an order of the bankruptcy court on November 14, 2013. Second, the property subject to UISD's lien was dealt with by the plan. As the district court observed, circuit courts have held that a general reference to the property at issue is sufficient to satisfy this requirement. *See, e.g., City of Concord v. N. New England Tel. Operations LLC (In re N. New England Tel. Operations LLC)*, 795 F.3d 343, 349 (2d Cir. 2015); *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640, 649 (7th Cir. 2008). Section 10.2 of the confirmed plan provides that:

> On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan, the property of each Estate shall vest in the applicable Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein or in the Confirmation Order.

This general reference, which refers to all property held by Reorganized Debtors, includes the property to which UISD's lien was attached.

Third, UISD participated in the reorganization. UISD filed two proofs of claim: one which sought $598,360.56, and an amended proof of claim for $464,709.97. This conduct is sufficient to satisfy the participation requirement. *See Baker Hughes Oilfield Operations, Inc. v. Morton (In re R.L. Adkins Corp.)*, 784 F.3d 978, 981 (5th Cir. 2015) (Jones, J., concurring) (stating that a secured creditor may participate "by filing a proof of claim and then negotiating with the debtor or attempting to foreclose its lien"); *In re Ahren Enters., Inc.*, 507 F.3d at 823.

Case: 15-10560 Document: 00513625438 Page: 10 Date Filed: 08/05/2016

Finally, there is no dispute that the confirmed plan did not specifically preserve UISD's lien. Accordingly, the district court properly held that UISD's lien was discharged as part of the reorganization and that res judicata may therefore apply to UISD's claims.

### 2.  *Application of Res Judicata*

Res judicata will bar a claim where the following elements are met: (1) "the parties must be identical in both suits," (2) "the prior judgment must have been rendered by a court of competent jurisdiction," (3) "there must have been a final judgment on the merits" and, (4) "the same cause of action must be involved in both cases." *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979)). These elements are satisfied here.

First, Vitro Asset Corporation and its affiliated debtors were parties to the bankruptcy proceedings. While UISD was not a formally named party, we have held that "[t]his element is satisfied not only by identity of 'formal or paper' parties but also of parties in interest, 'that is, . . . persons whose interests are properly placed before the court by someone with standing to represent them.'" *Shoaf*, 815 F.2d at 1051 (alteration in original) (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984)). In *Shoaf*, we held that a party met this requirement where, even though it was never formally named as a party to the bankruptcy proceedings, it participated as a creditor. *Id.* As addressed above, UISD participated in the bankruptcy proceedings by filing two proofs of claim. Second, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Third, the bankruptcy court's order confirming the plan constituted a final judgment. *Id.* at 1053.

Finally, "[t]o determine whether the same cause of action is involved in two suits, [this Court] has adopted the transactional test of the *Restatement (Second) of Torts*." *Id.* Pursuant to this test, we ask whether UISD's claim

10

No. 15-11056

before the district court "arose out of the same transaction that was the subject of the bankruptcy court's order." *Id.* at 1054. This is unquestionably the case here. The bankruptcy court's order incorporated and confirmed the reorganization plan that UISD now challenges.

As a result, res judicata bars UISD's challenge to the terms of the plan at this late stage. UISD's complaints about the plan and its potential impairment of UISD's claims should have been brought within the period set for objections to, and appeals from, the confirmation order in 2013.

## IV. CONCLUSION

The order of the district court is affirmed.